**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHELLE MARIE ALEMZADEH, | No.  2:19-CV-1425-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

       Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, see ECF Nos. 8 and 9, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment, see 28 U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits.  See ECF Nos. 14 and 15.

       The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

      For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

      To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

|   |   |   |
|---|---|---|
| | Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| | Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 11, 2016. See CAR 1228.[1] In the application, plaintiff claims disability began on September 30, 2015. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on June 20, 2018, before Administrative Law Judge (ALJ) Jane M. Maccione. In an October 1, 2019, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease of the lumbar spine, status post fusion; left knee torn meniscus; morbid obesity, status post bariatric surgery; and asthma;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work; she is limited to occasional climbing of ramps and stairs; she cannot climb ladders, ropes, or scaffolds; the claimant is limited to occasional balancing, stooping, kneeling, crouching, and crawling; she must avoid concentrated exposure to pulmonary irritants such as dust, gases, fumes, and pollens; she must avoid concentrated exposure to workplace hazards such as unprotected heights and dangerous moving mechanical parts;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 1228-39.

After the Appeals Council declined review on May 24, 2019, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on November 27, 2019. See ECF Nos. 12 and 13.

### III. DISCUSSION

In her brief, plaintiff argues the ALJ's residual functional capacity assessment cannot be sustained because it is not based on a proper evaluation of the medical opinion evidence. In particular, plaintiff contends the ALJ failed to properly evaluate opinions rendered by her treating physician, Dr. Kaplan.

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

///

///

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

also Magallanes, 881 F.2d at 751.

At Step 4, the ALJ considered the medical opinion evidence. See CAR 1237-38. Regarding plaintiff's mental impairments and limitations, the ALJ accepted the opinions of the agency non-examining reviewing psychological professionals, Drs. Loomis and Amado, who concluded that plaintiff's mental impairments are non-severe. See id. at 1238. The ALJ also accepted the opinion of agency examining psychologist, Dr. Richwerger, who stated that plaintiff has a mild impairment in her ability to perform work activities without special supervision, but is otherwise unimpaired from a psychological standpoint. See id.

With respect to plaintiff's physical capacity, the ALJ accepted the opinions of the agency non-examining reviewing physicians, Drs. Taylor and Huynh, who concluded that plaintiff can perform light work with some postural and environmental limitations. See id. at 1237. Also accepted was the opinion of the agency examining physician, Dr. Barnes, who agreed with the reviewing doctors that plaintiff can perform a similar range of light work. See id. at 1238.

The ALJ, however, did not entirely accept the opinions of plaintiff's treating physician, Dr. Kaplan, regarding physical limitations. See id. Regarding Dr. Kaplan, the ALJ stated:

> The undersigned gives less weight to the work-related restrictions provided by the claimant's treating provider, Paul E. Kaplan, M.D. (See Exhibits 2F/7, 3F/3, 20F/29). Throughout the record, Dr. Kaplan opined that the claimant could lift, carry, push, and pull 10 pounds, balance 25 percent of the time, bend at the waist 50 percent of the time, crawl 0 percent of the time, squat 0 percent of the time, twist 50 percent of the time, work at shoulder level 50 percent of the time, and may alternate sitting and standing every 120 minutes, sit for 120 minutes, stand for 120 minutes, and walk for 45 minutes (citations omitted). This is not consistent with the treatment records, which consistently note that the claimant had good response to injections and pain medications (See Exhibit 3F/2). This is not consistent with the medical evidence of record as a whole. It is not consistent with the claimant's reported work through much of the period covered, at the level of substantial gainful activity. For these reasons, these opinions ae given less weight.

CAR 1238.

///

///

7

Plaintiff argues generally:

> To briefly reiterate, treating physician Dr. Kaplan opined that Plaintiff can never lift or carry greater than 10 pounds, can balance 25% of the time, bend at the waist 50% of the time, never crawl or squat. She can alternate sitting and standing every 120 minutes while sitting for 120 minutes, standing for 120 minutes and walking for 45 minutes. Tr. 315; 319; 323; 327; 332; 1126; 1130; 1134; 1138; 1141; 1145; 1149; 1153; 1157; 1161; 1165; 1169; 1173; 1176; 1180; 1184; 1188; 1192; 1100; 1104; 1108; 1112.
>
> * * *
>
> The ALJ assigned "less weight" to the opinions of Dr. Kaplan for three reasons: (1) they are not consistent with treatment records which purportedly note that the claimant has good response to injections and pain medications; (2) are not consistent with the record as a whole; and, (3) not consistent with Plaintiff's work activity during the relevant time period. Tr. 1238. Plaintiff will address these factually inaccurate and legally deficient rationales, in turn.

ECF No. 14-2, pgs. 10, 12.

   A.   **Response to Injections and Pain Medication**

Plaintiff argues the ALJ erred in finding plaintiff shows "good response to injections and pain medications." CAR 1238. According to plaintiff:

> While the ALJ asserted Plaintiff had a good response to injections and pain medications, the record actually shows a partial response to treatment, *a modifier explicitly included in the medical notes cited by the ALJ but omitted in her discussion of the record*. *See e.g.* Tr. 309; 314; 318; 322; 326; 344; 352; 354; 864; 872; 1116; 1119; 1129; 1137; 1145; 1149; 1169; 1173; 1181; 1185. Dr. Kaplan *repeatedly* noted that she needed continued opioid therapy to treat her chronic pain and optimize functional status. Tr. 316; 320; 324; 328; 1151; 1187; 1199; 1219; 1223. She has had repeated facet injections for back pain. Tr. 361; 824. She has had Depo-medrol cortisone injection in her left knee. Tr. 396. She was prescribed Norco 10-325 mg and Oxycodone 30 mg. Tr. 362.

ECF No. 14-2, pg. 14 (underlining in original).

Dr. Kaplan's treatment notes are found in the record at Exhibits 2F (CAR 309-29), 3F (CAR 330-66), and 20F (CAR 1098-1133). In stating that plaintiff has a "good response" to pain management medications, including injections, the ALJ cites Exhibit 3F, page 2, at CAR 331. In this treatment note from October 2015, Dr. Kaplan writes: "Patient has a good but partial response to medication." CAR 331. Dr. Kaplan recommended plaintiff return in 60 days for medication management. See id.

8

The Court finds the ALJ erred by not providing any reasons for rejecting the modifier "but partial" to her characterization of Dr. Kaplan's treatment record. Given this modifier, the doctor's recommendation for continued medication management, and evidence that plaintiff did in fact engage in various forms of pain management over time, it appears plaintiff's response to injections and medication was partial in that it was effective at times and not effective at others, but was nonetheless good to the extent it was effective at times.

### B. The Record as a Whole

Next, plaintiff contends that the ALJ's reference to inconsistency with the medical record as a whole is not a sufficient basis to discredit Dr. Kaplan's opinions. Plaintiff argues:

> Dr. Kaplan's office records document having examined Plaintiff on numerous occasions, noting left hip, low back, bilateral knee pain, weakness and generalized discomfort and administering multiple lumbar paravertebral block facet joint injections. *See generally* Tr. 322-25; 318-21; 314-17; 336-43. The ALJ implicitly recognized this by citing to Dr. Kaplan's multiple consistent opinions during the relevant time period. Tr. 1238. Rejection of a medical provider's opinion as inconsistent with their own treatment notes is nothing more than the ALJ substituting her own lay opinion for that of the medical provider. *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C. D. Ca. January 28, 2010) (*citing Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975)). Dr. Kaplan was obviously aware of the content of his *own treatment notes* when he formulated his opinion, but in any event, it goes without citation to say that medical providers do not typically include functional assessments of a claimant's work-related limitations in their office notes. Put another way, medical records are not prepared in anticipation of litigation; it is for this reason that the Agency prefers medical experts to submit specific medical opinions "that reflect judgments about the nature and severity of [their patient's] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Having received multiple opinions from Plaintiff's treating physician, the ALJ was obligated to analyze them in a legally sufficient manner. As the Ninth Circuit has stated:
>
>> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, *even when the objective factors are listed seriatim.* The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.
>
> *Embrey,* 849 F.2d at 421 (emphasis added).
> Further, while Plaintiff does not dispute that "consistency" is a factor properly considered pursuant to 20 C.F.R. § 404.1527(c)(4), to be "consistent" an opinion does not need to be free of any doubt, 100% consistent, or anything of the kind. Such a high standard arguably does

> apply when the Agency determines whether to give "controlling weight" to a treating source opinion, *see* SSR 96-2p, but the ALJ's analysis of treating source opinions *does not end* at whether or not the opinion is entitled to controlling weight. Rather, if an opinion is not entitled to controlling weight, the ALJ must continue the inquiry to determine whether it can be afforded "more weight," and in the context of this analysis perfect consistency is simply not required. *Id*. (<u>an opinion "does not have to be consistent with all the other evidence…"</u>) (emphasis added by plaintiff in original)) (footnote omitted).
>
> When viewed in this (correct) light, the opinions of Dr. Kaplan, reasonably limiting Plaintiff to a range of sedentary work, are not inconsistent with the medical evidence of record, as demonstrated in the Summary of Relevant Medical Evidence *supra*. To briefly highlight the salient records, Plaintiff has moderate to marked degenerative disc disease and spondylosis of the lumbar spine. Tr. 359. A 2012 CT scan of the thoracic spine exhibited degenerative disc disease in both the thoracic and lumbosacral spines with facet syndrome. She rated her pain as severe. She had a reduced range of motion of the lumbosacral spine in all planes to 70% of normal. Painful bilateral lumbosacral paraspinal muscle spasms were noted. Tr. 311-13. She has been diagnosed with displacement of lumbar intervertebral disc and degeneration of lumbar or lumbosacral intervertebral disc. Tr. 362. She has had multiple lumbar paravertebral block facet joint injections. *See* Tr. 322-25; 318-21; 314-17; 336-43. Imaging in March 2016 revealed left knee medial compartment joint space narrowing. Tr. 394. In September 2016, exam showed increased spasm bilateral in the lumbar area with decreased range of motion on flexion and extension as well as tenderness over the lumbar spine. She received L3-S1 facet injections. Tr. 523-24. In April 2017, Plaintiff received a cortisone shot to her knee and a knee brace was ordered. Tr. 533-36. In March 2018, Plaintiff was diagnosed with low back pain, cervicalgia, and myalgia. Tr. 1073-75.

ECF No. 14-2, pgs. 12-14.

Plaintiff's argument is persuasive.  The ALJ's reference to "the medical evidence of record as a whole" fails to explain which portions of the record undermine which specific opinion rendered by Dr. Kaplan.  To satisfy the Commissioner's burden, the ALJ must set forth her interpretation of the record and explain why the doctor's interpretation is inconsistent.

**C.     Work History**

Finally, plaintiff challenges the ALJ's reference to her work history as a reason to give Dr. Kaplan's opinions less weight.  Plaintiff contends:

> Plaintiff acknowledges that Plaintiff engaged in part-time work activity. However, this is not inconsistent with Dr. Kaplan's opinions nor does it provide support for the ALJ's light RFC finding. Dr. Kaplan plainly limited Plaintiff to reduced range of sedentary work. Plaintiff testified she worked for brief periods selling massage chairs and a road show kiosk where she worked 4 hours a day and spent most of her time seated. She never lifted anything over 10 pounds. Tr. 21-25. This is simply

not inconsistent with Dr. Kaplan's opinion, in fact, quite the contrary. And, the ability to perform mostly seated work for 4 hours, is patently inconsistent with the ALJ's finding that Plaintiff can stand and walk for most of the day and lift up to 20 pounds, the Agency's definition of light work. 20 C.F.R. § 404.1567(b).

ECF No. 14-2, pgs. 14-15.

According to the ALJ, Dr. Kaplan's opinions of significant work-related limitations are ". . .not consistent with the claimant's reported work through much of the period covered, at the level of substantial gainful activity." CAR 1238.  While it is undisputed that plaintiff worked part-time during the period Dr. Kaplan opined she experienced significant limitations, the ALJ does not discuss the manner in which plaintiff did that work.  According to plaintiff, her part-time work was done in a sedentary manner and is consistent with Dr. Kaplan's findings at the time that plaintiff has functional capabilities consistent with, at most, sedentary work.  The Court finds the ALJ erred by not explaining how plaintiff's history of part-time work done in a sedentary manner undermines Dr. Kaplan's opinion that plaintiff has limitations precluding all but sedentary work activities.

### IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 14, is granted;

2. Defendant's motion for summary judgment, ECF No. 15, is denied;

3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  September 28, 2020

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE